**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW LEE STEWART,<br><br>Plaintiff,<br><br>v.<br><br>NISSAN NORTH AMERICA, INC., and NISSAN MOTOR ACCEPTANCE CORPORATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 22-cv-4734<br><br>District Judge Jorge L. Alonso |

**FIRST AMENDED COMPLAINT[1]**

Plaintiff Matthew Lee Stewart ("Plaintiff"), by and through his attorneys Lisa L. Clay and Shannon Foley, makes the following First Amended Complaint alleging violations of the Age Discrimination in Employment Act (the ADEA) and in support of those allegations, states as follows:

**NATURE OF THE ACTION**

1. Plaintiff Matthew Stewart worked for Defendants Nissan North America ("NNA") and Nissan Motor Acceptance Corporation ("NMAC"), (collectively referred to as "NISSAN") for nearly 20 years, first as a Dealer Technical Specialist for NNA and later as a Financial Services Manager for NMAC.

2. During Mr. Stewart's employment he learned that both NNA and NMAC fostered and encouraged a so-called "up and out" company culture.

[1] The Parties agree by stipulation that this pleading is properly and timely filed pursuant to Fed. R. Civ. P. 15(a)(1)(B).

3. Earlier "reductions in force" made it clear to Plaintiff and others that NISSAN's long-standing pattern and practice is to force qualified high-performing older workers out and/or try to make their working conditions so intolerable that they will quit voluntarily.

4. Consistent with this practice, in or about February of 2020, both NNA and NMAC offered "voluntary separation packages" to any employee who had been with the company for five years and was over a certain age.

5. Plaintiff did not qualify because he was just shy of the age cutoff.

6. A few months later, in June of 2020, Plaintiff was advised that NMAC's sales organization was being "restructured."

7. Despite applying for and being highly qualified for a number of positions within NNA and NMAC, Plaintiff was not hired for any of the open positions and his employment was terminated in August of 2020.

8. Younger and less experienced individuals were hired for each of those open positions.

9. Plaintiff's experience and the experiences of the other older workers who were systematically pushed out of the organization are just a continuation of NISSAN's long-standing ageist corporate culture, a culture that continues to this day, in violation of the ADEA and the IHRA.

**JURISDICTION, PARTIES, AND VENUE**

10. This Court has jurisdiction over Plaintiff's Complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

11. At various times during the relevant period to this action, Plaintiff was a resident of the Northern District of Illinois. At all relevant times, Plaintiff was over the age of 40.

12. At all relevant times, Plaintiff was an "employee" of Defendants as that term is used in the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* and the Illinois Human Rights Act, 775 ILCS 5/1 *et seq*.

13. Defendants Nissan North America ("NNA") and Nissan Motor Acceptance Corporation ("NMAC"), its wholly owned subsidiary, jointly employ over 10,000 people across the country, including many in Illinois.

14. The events giving rise to this Complaint occurred at NNA and NMAC's offices located at 600 North Enterprise Street, Aurora, IL 60504.

15. At all relevant times, Defendants were "employer" of Plaintiff as that term is used in the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* and the Illinois Human Rights Act, 775 ILCS 5/1 *et seq*.

16. Venue in the United States District Court for the Northern District of Illinois is appropriate pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

**Plaintiff's Employment**

17. Plaintiff began working for Defendant NNA as a Dealer Technical Specialist in the Aurora location on or about January 3, 2001. At the time he was hired, Plaintiff had engineering training and had already worked in the automotive industry for over ten years.

18. Plaintiff received positive performance reviews in that role sufficient to support his promotion to Distribution Analyst for Defendant NNA, also in the Aurora location, about a year later.

19. Plaintiff was subsequently again promoted in October 2002 to Financial Services Manager ("FSM"), this time with Defendant NMAC, also at the Aurora location.

20. Plaintiff performed the duties of these role satifactorily until his termination on August 3, 2020.

21. In February of 2020, both NNA and NMAC offered a voluntary separation package to any employee who wished to resign and receive a severance payment in exchange for a release of all claims. The only requirements were that the individual wishing to participate have worked for NISSAN for five years and be older than 52.[2]

22. Plaintiff was not old enough to qualify for the program and would not have been interested in any case as he liked his job, needed to continue working, and had no interest in leaving NISSAN.

**Defendant's 2020 "Reorganization" and Plaintiff's Unsuccessful Attempts to Find Another Position Within NISSAN**

23. In June of 2020, the Director of Sales Operations, the Regional Services Manager, and a Human Resources representative advised Plaintiff via a video call that the Sales Operations organization was "undergoing a restructing and reorganization process," and suggested that his position would be eliminated in August of 2020.

24. This "restructing and reorganization process" advised of the anticipated elimination of the roles of 8 employees, 7 of whom were over 40.

25. Plaintiff was not provided anything in writing to suggest that the termination decision had been made; rather, he was encouraged to apply for internal positions and told that if he was not hired for an existing position his employment would be terminated.

---

[2] Plaintiff is unsure whether the age requirement was 52 or something over 52. For sake of this paragraph the point is that it was at least 52 because Plaintiff, who was 51 at the time, was not eligible.

26. Plaintiff complained to his immediate supervisor that he was being targeted because of his age; Plaintiff's immediate supervisor told Plaintiff she didn't even know that Plaintiff was a target of the "reorganization."

27. Between early June and August 3, 2020, Plaintiff applied for 10 internally-posted positions within NNA and NMAC. He learned that he had not received those positions at various dates up to an including August 3, 2020.

28. Plaintiff was qualified for each of the ten positions.

29. Plaintiff received interviews for only four of those positions.

30. Specifically, Plaintiff applied for a Senior Fixed Operations Manager position in Iowa. Plaintiff was a perfect fit for the role. He had already done that job for another organization, was willing to relocate and had existing positive relationships with the dealers in that region.

31. Instead, NISSAN hired a 32-year old with significantly less experience for that role. Plaintiff learned of NISSAN's hiring decision shortly before he was terminated on August 3, 2022.

32. In their EEOC Position Statement, NISSAN claims that the hiring manager "decided it made more sense to train an employee on Nissan-specific aftersales elements rather than train an employee on aftersales entirely," a statement that utterly disregards and misrepresents Plaintiff's significant aftersales experience both with NISSAN and in prior roles.

33. Plaintiff also applied for and went through multiple interviews for the role of Planner, Recalls & Campaigns based in Franklin, Tennessee. Plaintiff was the most qualified and experienced candidate for that role.

34. Upon information and belief, NISSAN hired a less experienced and younger contractor to transition into that role. Plaintiff learned of NISSAN's hiring decision the day he was terminated, August 3, 2020.

35. Plaintiff and other older workers were told point-blank that they were not wanted. One NISSAN manager informed another older worker who was terminated at the same time as Plaintiff that "there are no jobs for you here." NISSAN Management sought the list of jobs applied for by another older worker terminated at the same time who complained about age discrimination, to ensure he would not be hired for any open positions. Another older worker who was terminated by NISSAN was told "why don't you just leave," when they changed his territory in order to force him to drive hours into his territory. A terminated older worker was told he was qualified for the job, but he was "not what Nissan was looking for," i.e. a younger worker was hired. An older terminated worker's Senior Level Manager stated to him, "I don't like the way Nissan treats its older workers."

36. Tellingly, of the eight employees whose roles were "reorganized" and/or eliminated, the only one of those individuals who received an offer to remain employed with NISSAN was the employee who was under 40.

37. Plaintiff's job responsibilities were reallocated after August 3, 2020 as follows: the Milwaukee portion of his Wisconsin and Upper Michigan territory was reassigned to a Minneapolis-based FSM in his mid-30s, and the remainder was reassigned to multiple telemarketing FSMs based in Dallas. Likewise, the other terminated employees' job duties were allocated to younger, less experienced employees after the August 3, 2020 date.

**NISSAN's Termination Of Plaintiff's Employment**

38. NISSAN terminated Plaintiff's employment on August 3, 2020 by sending him a "personal and confidential" "Confidential Voluntary Separation Agreement and Release" stating

that he "may not sign this Agreement until your Employment Separation Date," i.e. after August 3, 2020.

39. During his exit interview on that day, Plaintif advised the Human Resources representative of his concern that the individuals impacted by the downsizing were disproportionately older, more experienced workers. The Human Resources representative did not deny that fact.

40. On August 4, 2020 a representative of NISSAN's Human Resources Department sent an email to Plaintiff as follows: "Please be advised that a correction has been made to the information contained in Exhibit A of your separation agreement. As a result, a corrected agreement has been attached for your consideration. As this update is being distributed today, you will have 45 days from today's date (Aug 4) to consider the terms of the agreement."

41. NISSAN continues to force qualified high-performing older workers out and/or tries to make their working conditions so intolerable so they will quit. Recently, NISSAN Management stated in a meeting, "Old people have to go away." Another plan is underway to terminate older workers as part of Nissan's ongoing systemic age discrimination.

**Plaintiff's Exhaustion of Administrative Remedies**

42. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission on May 24, 2021, alleging discrimination based on age and retaliation in violation of the ADEA (Charge No. 440-2020-04280, attached hereto as Exhibit 1).

43. Plaintiff received his Dismissal and Notice of Suit Rights from the EEOC on June 8, 2022 (Exhibit 2 hereto).

44. This Complaint is timely filed within 90 days of the reciept of the EEOC's Dismissal and Notice of Rights.

**COUNT I: AGE DISCRIMINATION IN EMPLOYMENT ACT
AGE DISCRIMINATION (29 U.S.C. § 623(a)(1))**

45. Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

46. The ADEA prohibits employers from discharging any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age.

47. Defendants discriminated against Plaintiff because of his age by refusing to hire him for internal positions for which he was the most qualified candidate.

48. Defendants discriminated against Plaintiff because of his age by terminating his employment.

49. Defendants' actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

50. Plaintiff has been damaged by Defendants' conduct as set forth below.

**COUNT II: AGE DISCRIMINATION IN EMPLOYMENT ACT
RETALIATION (29 U.S.C. § 623(d))**

51. Plaintiff restates each and every paragraph herein and incorporates them by reference as though fully stated herein as part of Count II of this Complaint.

52. The ADEA prohibits employers from discharging any individual or otherwise discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's opposition to discrimination on the basis of age.

53. Defendants retaliated against Plaintiff because of his age and because of his protected action by refusing to hire him for internal positions for which he was the most qualified candidate after he complained of age discrimination.

54. Defendants discriminated against Plaintiff because of his age and because of his protected action by terminating his employment after he complained of age discrimination.

55. Defendants' actions were willful, intentional, and/or done maliciously or with callous disregard or reckless indifference to Plaintiff's federally protected rights.

56. Plaintiff has been damaged by Defendants' conduct as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Matthew Lee Stewart seeks damages as permitted by the ADEA including, but not limited to:

a. lost wages and benefits in an amount to be proven at trial;

b. reinstatement and/or front pay and benefits in an amount to be proven at trial;

c. liquidated damages in an amount to be proven at trial;

d. attorneys' fees and costs;

e. all available interest;

f. offset of tax liability; and

g. any other relief the Court may deem just and equitable.

## JURY DEMAND

Plaintiff hereby demands a jury trial as provided by Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ *Lisa L. Clay*
One of the Attorneys for Plaintiff

Shannon M. Foley
Pro Hac Vice
Foley Lyman Law Group LLP
1500 Rosecrans Avenue, Suite 500
Manhattan Beach, CA 90266
310.706.4050
Email: shannon@foleylymanlaw.com

Lisa L. Clay Attorney at Law, Ltd.
(ARDC No. 6277257)
2100 Manchester Rd., Suite 1612
Wheaton, IL 60187
630.456.4818
Email: lisa@clayatlaw.com