UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Matthew Stewart,<br><br>   Plaintiff,<br><br> v.<br><br>Nissan North America, Inc., *et al.*<br><br>   Defendants. | Case No. 22-cv-4734<br><br>Hon. Jorge L. Alonso |

**Memorandum Opinion and Order**

Before the Court are Defendants Nissan North America, Inc. and Nissan Motor Acceptance Corporation's motion for summary judgment against Plaintiff Matthew Stewart and various motions to seal. For the reasons that follow, the Court grants Defendants' motion for summary judgment and grants in part and denies in part the parties' motions to seal. Civil case terminated.

**Background**

The following facts are taken from the record and are undisputed or presented in the light most favorable to Stewart, the non-moving party.

Stewart began working for Defendants in January 2001 as a Technical Specialist. Defendants promoted Stewart to various different roles throughout his employment, until he obtained the position Financial Services Manager in July 2015. Stewart worked in this position until he was terminated on August 3, 2020.

On June 4, 2020, Stewart attended a call with Director of Sales Operations Eric Ledieu, Regional Financial Sales Manager John McBane, and Human Resources Partner Camille Dessaw, who informed Stewart that his current position would be eliminated due to an organizational

1

restructuring. On the same day, Stewart received a letter which provided that "his position will be eliminated or consolidated with another position(s) at the close of business on August 3, 2020." ECF No. 149 ¶ 35. The letter provided that Stewart could voluntarily separate at any time without receiving severance pay or stay at the company through August 3 and apply for open positions, receiving severance pay if he did not receive an offer for a comparable position.

Stewart applied to ten open positions at Nissan: Commercial Sales Manager ("P1"), Senior Dealer Operations Manager ("P2"), Upstream Remarketing Sales Manager ("P3"), Consumer Credit Manager ("P4"), Senior Fixed Operations Manager ("P5"), Planners, Recalls, and Campaigns ("P6"), Senior Planner, Client Journey Technology ("P7"), Commercial Sales Manager ("P8"), Senior Fixed Operations Manager ("P9"), and Senior Planner, Campaign Acceleration and Special Projects ("P10"). Stewart was not selected for any of these positions and was terminated on August 3, 2020.

As relevant here, the hiring manager for the P5 position was Scott Harrison. Ultimately, 32-year-old Erik Anderberg was selected for the position. Greg Ebbs informed Harrison that he had previously interviewed Anderberg, was impressed by his resume, and felt that he had the necessary aftersales experience for the role. Ebbs similarly noted a lack of Stewart's aftersales experience, which Harrison believed was evident from Stewart's resume. Specifically, Stewart had only a small window of aftersales experience approximately 20 years prior. Harrison ultimately made the decision to hire Anderberg in conjunction with Ebbs because he had "recent aftersales experience with General Motors, doing the exact role that [Defendants] were hiring for" and he had experience working directly with dealers. ECF No. 97 at 71:18–72:5.

In June and July 2020, Stewart informed Lisa Cicchini, his Areas Operations Manager and

2

direct supervisor, that he believed he was being subject to age discrimination. Stewart made similar complaints to Dessaw in late July and early August 2020. Stewart did not use the formal internal complaint process available to him. On May 24, 2021, Stewart filed a charge with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants terminated him and refused to hire him for various positions because of his age and in retaliation for his complaints of age discrimination. On September 2, 2022, Stewart filed suit maintaining the same allegations under the Age Discrimination in Employment Act ("ADEA") 29 USC § 623(a)(1) and (d).

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and must view all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). However, "[t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Ultimately, summary judgment is warranted

3

only if a reasonable jury could not return a verdict for the nonmovant. *Id.* at 248.

## Discussion

For the reasons that follow, Defendants' motion for summary judgment is granted.

I.     **Timeliness**

Defendants argue that many of Stewart's claims regarding the at-issue employment decisions are untimely because he did not file a charge of discrimination with the EEOC "within 300 days after the alleged [discrimination] occurred." 29 USC § 626(d)(1)(B). Specifically, they argue that because Stewart filed his charge of discrimination on May 24, 2021, adverse employment decisions communicated to him before July 28, 2020—including Defendants' elimination of Stewart's position, Defendants' failure to hire Stewart for six of ten jobs, and Stewart's termination—are time barred. The Court agrees that the elimination of Stewart's position, Stewart's termination, and four of the ten refusals to hire are time-barred, but otherwise declines to grant summary judgment on timeliness grounds.

a. **Timeliness of Position Elimination and Termination Claims**

On June 4, 2020, Stewart attended a call with Ledieu, McBane, and Dessaw, who informed Stewart that his current position would be eliminated. ECF No. 49 ¶ 34. On the same day, Stewart received a letter which provided that "his position will be eliminated or consolidated with another position(s) at the close of business on August 3, 2020." *Id.* ¶ 35. The letter provided that Stewart could voluntarily separate at any time without receiving severance pay or stay at the company through August 3, 2020 and apply for open positions, receiving severance pay if he did not receive an offer for a comparable position. *Id.* Defendants argue that these communications were sufficient to start the limitations period for Stewart's claims relating to his termination and the elimination

4

of his position. Stewart responds that the letter did not clearly convey that his termination was final and that the continuing violations doctrine otherwise saves his untimely claims. The Court agrees with Defendants.

"To start the limitations clock [for an employment discrimination claim], the employer's decision must be final, ultimate, and non-tentative, and the employee must receive unequivocal notice of it." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 456 (7th Cir. 2018). Defendants' communication to Stewart serves as sufficient notice of both Stewart's termination and the elimination of his position to start the limitations period for his claims. *Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) (holding that the limitations clock began to ran on the date an employee was notified that he would not receive tenure, despite the fact he could file a grievance as to the termination); *Wrolstad*, 911 F.3d at 456 (holding a defendant's letter informing plaintiff that it would sue if he pursued an appeal was sufficient to start the limitations period, even though the threat was contingent on actions of the plaintiff); *Dodson v. Nissan N. Am., Inc.*, No. CV-23-00939-DLR, 2025 WL 1135164, at *3 (D. Ariz. Apr. 16, 2025) (holding that a claim for wrongful termination and the elimination of a position from the reorganization at issue in this case began to accrue on the date that the plaintiff was informed his position was eliminated and he would be terminated if he did not find another role in the company); *Ashworth v. Main Line Hosps. Inc.*, No. CV 23-1534, 2024 WL 2747965, at *6 (E.D. Pa. May 29, 2024) ("A 'notice of termination [is not] rendered ambiguous by the mere potential for continued employment.'" (quoting *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 85 (3d Cir. 2000))).

Stewart also argues that the continuing violations doctrine applies because "the effects of the past discrimination were continuing." ECF No. 157 at 11. His argument is misplaced because

5

the continuing violations doctrine is available only in employment discrimination cases concerning non-discrete acts, such as hostile-work environment claims, not "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002); *Crum v. Advoc. N. Side Health Network*, 733 F. Ap'x 842, 843 (7th Cir. 2018) ("[T]here is no general continuing-violation doctrine in the federal law of employment discrimination.") Accordingly, the Court grants summary judgment to Defendants on Stewart's claims relating to the elimination of his position and his termination.

### b. Timeliness of Refusal to Hire Claims

Defendants argue that Stewart became aware he was not selected for the P1, P2, P3, P7, P8, and P10 positions before July 28, 2020, and, as such, his claims relating to those positions are untimely. Stewart concedes that his claims as to the P1 and P7 positions are untimely. As to the P2 position, he testified that it "sounds correct" that he was notified he did not obtain the P2 position on July 15, 2020. ECF No. 81 at 207:10–13.[1] As to the P10 position, Stewart testified he knew that he was not selected prior to July 28, 2020. *Id.* ¶ 78 (admitting that "Stewart testified to being informed he had not been selected on July 22, 2020").

However, the evidence cited by Defendants regarding notice of the P3 and P8 positions is not precise. For the P3 position, Stewart was asked if he was informed he did not receive the P3 position "on or about July 15th of 2020" to which he responded "[y]es." ECF No. 81 at 113:21–23. As to the P8 position, Stewart also responded "[y]es" when asked if he was notified that he did not receive the position "on or about July 23, 2020." *Id.* at 153:18–21. Defendants characterized this evidence as establishing that Stewart was notified he did not receive these positions on dates

---

[1] Stewart's argument that this fact is disputed relates to another position. ECF No. 149 ¶ 43 (citing a deposition answer relating to the P3 position).

6

certain—July 15, 2020 and July 23, 2020. ECF No. 149 ¶¶ 47, 69. However, the only evidence that supports the date of notification is this deposition testimony, which is at best ambiguous as to the exact date of notification and there is thus a genuine dispute of fact as to whether Stewart's claims as to those positions are timely.

Accordingly, the Court grants summary judgment to Defendants on timeliness grounds for Stewart's claims relating to positions P1, P2, P7, and P10, but Stewart's claims remain as to positions P3, P4, P5, P6, P8, and P9.

## II. Refusal To Hire Claims

Defendants argue they are entitled to summary judgment on Stewart's refusal to hire claims which are not time-barred for positions P3, P4, P5, P6, P8, and P9. The ADEA makes it unlawful to "fail or refuse to hire or to discharge any individual . . . because of such individual's age" 29 USC § 623(a). An ADEA claim requires a plaintiff to prove that "but for his age, the adverse action would not have occurred." *Wrolstad*, 911 F.3d at 454. As such, "the basic question at the summary-judgment stage is whether the evidence as a whole would allow a reasonable jury to find that the plaintiff suffered an adverse job action because of his age." *Id.* Because a reasonable jury could not find that Stewart was not hired for these positions due to his age, the Court grants summary judgment to Defendants.

A reasonable jury could not conclude that Defendants failed to hire Stewart because of his age for positions P3, P4, P6, P8, or P9 because, by Stewart's own admission, the individuals that were hired for these positions were not outside of Stewart's protected class. ECF No. 157 at 6–7 (identifying only the P1, P5, P7, and P10 positions as those where Defendants "hired younger, less experienced applicants to fill the role"); *see also Barnes v. Bd. of Trs. of Univ. of Illinois*, 946 F.3d

7

384, 389 (7th Cir. 2020) ("To survive summary judgment on his failure-to-promote claim, Barnes needed evidence that . . . someone outside the protected class who was 'not better qualified' was hired instead.") In fact, Stewart concedes that he may not proceed with failure to hire claims for these positions. ECF No. 157 at 17 (arguing that "the positions for which Stewart may claim discrimination" are P1, P5, P7, and P10). Accordingly, no reasonable jury could conclude that the Defendants did not hire Stewart because of his age and the Court grants summary judgment to Defendants as to Stewart's claims for failure to hire for positions P3, P4, P6, P8, and P9.

This leaves Stewart's claims that Defendants discriminated against him on the basis of his age by refusing to hire him for the P5 position. Stewart argues that the applicant chosen for the role, 32-year-old Anderberg, did not have superior qualifications to him because Stewart had "20 years of mostly Nissan-specific experiences" while Anderberg had only 7 years of experience and because Stewart scored higher on a candidate assessment tool. ECF No. 157 at 17–18.

However, even assuming that Stewart is correct that he is equally or more qualified, he has put forward no evidence that the decision to hire Anderberg was on the basis of Stewart's age, rather than an honest decision by the hiring manager that the applicant was preferable for the position. "An employer's genuine belief that another candidate's vision for the organization or skillset makes them better suited for the job is a legitimate, nondiscriminatory hiring rationale." *Cunningham v. Austin*, 125 F.4th 783, 789 (7th Cir. 2025). A court should not second guess an employer's decision to weigh desired traits, such as "subject matter expertise or difficult to measure intangibles." *Id.* However, a plaintiff can demonstrate that an explanation for a decision was pretextual through demonstrating that it "has no basis in fact" or through "ambiguous or suggestive comments or conduct." *Paterakos v. City of Chicago*, No. 24-1567, 2025 WL 2314843,

8

at *6 (7th Cir. Aug. 12, 2025). Stewart has not established pretext or provided any other evidence that his age was the reason he was not selected for the P5 position.

Harrison's and Ebb's decision to hire 32-year-old Anderberg had a basis in fact. Harrison testified that he made the decision to hire Anderberg in coordination with Greg Ebbs.[2] ECF No. 97 at 71:4–13. The primary reason they chose Anderberg was because he had recent experience in aftersales experience, which was relevant to the role, and that experience outweighed Stewart's two-years of aftersales experience from approximately 20 years prior. *Id.* at 53:22–24, 56:19–21, 57:4–8, 60:3–5, 71:21–72:5, 76:24–77:1. The Court finds that this explanation is based in fact, and is not in the position to weigh the relative value of scores on assessments and experience with Defendants against more recent and extensive relevant job experience. *Cunningham*, 125 F.4th at 789.

Stewart has presented no other evidence, such as evidence of pretext, that could lead a reasonable jury to conclude he was not offered the P5 position because of his age. To be sure, Stewart points to certain comments and actions taken by various employees of the Defendants that could be considered suggestive or indicate a distaste for older workers generally, largely relating to motives for the reorganization. *See, e.g.*, ECF No. 169 ¶¶ 27–45. However, even assuming that these statements and documents are admissible, none come from Harrison or Ebbs, or relate to hiring for the P5 position. *Serir v. Cmty. Coll. Dist. No. 514*, No. 21-2696, 2022 WL 807864, at *3 (7th Cir. Mar. 16, 2022) (holding that comments by an individual who had no role in a specific application could not permit "a reasonable jury to conclude" an employer denied a plaintiff's "application because of his age."); *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 935 (7th Cir. 2020)

---

[2] To the extent Stewart attempts to argue that this position was filled at the direction of someone other than Ebbs and Harrison, he has provided no evidence for that argument.

("A remark or action *by a decision-maker* reflecting unlawful animus may be evidence of his or her attitudes more generally." (emphasis added)); *Hasan v. Foley & Lardner, LLP*, 552 F.3d 520, 528 (7th Cir. 2008) ("[D]erogatory remarks are relevant if they are made by someone who provided input into the adverse employment decision.").

Accordingly, because Harrison and Ebbs had "nondiscriminatory reasons for preferring" Anderberg, "[n]o evidence suggests that these reasons were pretextual," and no other evidence suggests that the decision was on the basis of Stewart's age, the Court must grant summary judgment to Defendants on Stewarts remaining claim for refusal to hire for the P5 position. *Wrolstad*, 911 F.3d at 455–56.

### III. Retaliation Claims

In addition, Defendants have moved for summary judgment on Stewart's claims that he was not hired for positions P3, P4, P5, P6, P8, and P9 because of complaints he made concerning age discrimination. In June and July 2020, Stewart complained to Cicchini that he believed he was being subject to age discrimination. ECF No. 150 ¶¶ 59–60. Stewart made similar complaints to Dessaw in late July and early August 2020. *Id.* ¶¶ 61, 64. Stewart did not use the internal complaint process available to him. ECF No. 169 ¶¶ 22.

"In order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity. It is not sufficient that a decision-maker could have or even should have known about the employee's complaint." *Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512–13 (7th Cir. 2021) (citations omitted). Here, Stewart has provided no evidence that Cicchini or Dessaw were involved in the hiring decisions for the at-issue positions or that they

10

informed the individuals who were responsible for those decisions. Absent such evidence, a reasonable jury could not conclude that Stewart was terminated because of his complaints of age discrimination, and the Court grants summary judgment to Defendants.

### IV. Motion to Seal

Lastly, the parties dispute whether certain exhibits are properly filed under seal. For the reasons stated below, the parties' motions to seal are granted in part and denied in part.

First, the Court grants the motions to seal as to exhibits or portions of exhibits not discussed below because the Court did not rely upon them in deciding the instant motion for summary judgment. *See Vazquez-Velazquez v. Costco Wholesale Corp.*, No. 23 C 4477, 2025 WL 2532620, at *5 (N.D. Ill. Sept. 2, 2025) (granting a motion to seal where the exhibits were not relied upon in deciding the motion); *Williams v. Billington*, No. 3:22-CV-1300-MAB, 2024 WL 492110, at *2 (S.D. Ill. Feb. 8, 2024) (similar and collecting cases).

However, the Court concludes that certain information should not remain under seal because it was relied upon and neither implicates third-party confidentiality interests nor would jeopardize Defendants' competitive position. For instance, Exhibit B at 18:23–21:17 and Exhibit C at 204:22–211:24 concern Stewart's complaints of age discrimination or the general process for which such a complaint should be handled. Defendants shall refile these exhibits with this information unredacted. And while Exhibit C at 214:1–223:16 contains certain third-party information, that information can be redacted while allowing the public to see information relevant to the resolution of this dispute concerning Defendants' hiring practices generally and the history of hiring for the roles for which Stewart was not selected, which the Court does not believe will jeopardize Defendants' competitive position. Defendants shall refile this exhibit with minimal

11

redactions to the extent necessary to protect the identity of third parties. Further, Ledieu 30(b)(6) Deposition Exhibit 18, Ledieu Depostion Exhibit 40, and Dessaw Deposition Exhibit 11 consist of proposed separation agreements for Stewart that do not identify any third party with specificity and which the Court does not believe could realistically harm Defendants' competitive position. Defendants shall file public versions of these documents without redactions.

Lastly, Exhibit S consists of an EEOC Position Statement relevant to this litigation. This document shall be filed publicly by Defendants, as they concede it can be obtained via a Freedom of Information Act request. ECF No. 175 at 3, n.1.

## Conclusion

For the reasons discussed above, Defendants' motion for summary judgment [70] is granted and the parties' motions to seal [104] [116] [158] [164] [170] are granted in part and denied in part. All other pending motions are terminated. Civil case terminated.

**SO ORDERED.**     **ENTERED: September 19, 2025**

**HON. JORGE ALONSO**

**United States District Judge**